# JANUARY TERM, 1902.

## SPAULDING v. STEEL.

1. DOMICILE—HUSBAND AND WIFE.

Though, in general, the domicile of a wife is fixed by that of her husband, it is his domicile in fact, and not necessarily that which he proclaims to be such, that is controlling.

2. SAME—EVIDENCE.

In a suit by a receiver to recover, on the ground of her nonresidence, the consideration received by the insolvent's wife for her dower right in lands conveyed in 1895, complainant's evidence showed that the insolvent had voted at three successive general biennial elections in Oregon, beginning in 1892, and had from time to time, in various conveyances, described himself as a resident of that State. The wife's testimony tended to show that his sojourn in Oregon was for a temporary purpose; that he had, during his absence, kept up a house, occupied by members of his family, in St. Johns, this State, and had spent a part of the time there during the period; that, at the time of the conveyance, the parties were at their house in St. Johns; and that he thereafter returned to Oregon to wind up his business, and dispose of his household goods not previously sold. *Held*, to warrant a finding that the husband never intended to take up his permanent residence in Oregon, and give up his residence in this State.

Appeal from Clinton; Stone, J. Submitted October 11, 1901. Decided January 7, 1902.

Bill by Frank M. Spaulding, receiver of the estate of Robert M. Steel, insolvent, against Carrie A. Steel, the St. Johns Land Company, Limited, and Carrie A. Steel, administratrix of the estate of Robert M. Steel, deceased, to reach property alleged to belong to the insolvent estate. From a decree dismissing the bill, complainant appeals. Affirmed.

*Spaulding, Norton & Dooling*, for complainant.

*H. E. Walbridge*, for defendants.

MONTGOMERY, J.    Complainant is the receiver of the estate of Robert M. Steel, insolvent.   On the 27th day of September, 1895, Robert M. Steel was the owner of lands of very great value in Michigan.   On that date there was organized the St. Johns Land Company, Limited, and the lands previously held by Robert M. Steel were conveyed to the St. Johns Land Company, Limited, the defendant Carrie A. Steel joining in the conveyance for the purpose of releasing her dower right in the property conveyed.   In consideration of her release of the dower right, she received 100 shares of the preferred stock and 123 shares of the common stock of said company, which appears to have been a reasonable price for her inchoate dower interest, if she was entitled to dower in her husband's lands.   Whether she was entitled to dower depends upon the residence of the parties at that date.   The theory of the bill is that Robert M. Steel and his wife were, at that date, residents of Hilgard, Or., and that, therefore, defendant Carrie A. Steel had no inchoate dower interest in the lands owned in this State, and that there was no consideration for the issuing of the stock mentioned to her.

The question is very largely a question of fact.   There are some circumstances which tend to support the complainant's contention, and circumstances which are entitled to considerable weight.   Perhaps the most important facts, if unexplained, are that in June, 1892, June, 1894, and June, 1896, Robert M. Steel voted at Hilgard, Or., and in certain conveyances, made from time to time, described himself as a resident of Hilgard, Or.   If he were himself a party to this litigation, and, particularly, if there were circumstances which in any way tended to support an estoppel, it might be said that he would not be in a position to complain of a finding that his domicile was at Hilgard.   But in this proceeding, if we assume what, under ordinary circumstances, we deem the law to be, that

the domicile of the wife is the domicile of the husband, that domicile of the husband which fixes that of the wife is his domicile in fact, and not that which he proclaims to be his domicile.    There is no element of estoppel involved.

. In justice to Mr. Steel's memory, it should be stated that it is not an unfair inference from the record that he may have cast his votes upon the supposition that a sojourn of six months in Oregon entitled him to vote there, even if his stay there was expected to be but temporary, and although he may have regarded St. Johns as his actual, permanent home.    Indeed, we may take notice that this is not an uncommon understanding among people unlearned in the law.    Mrs. Steel herself evidently had that impression, as evidenced by testimony which she gave in another case, when examined by counsel for the complainant.    She also testified that she supposed that where a man votes is where his residence is.    This testimony was given in response to questions ingeniously framed, with the evident purpose of fixing her residence at Hilgard.    To the question finally put to her, "Then you understood that his residence was Hilgard, Oregon, and that you resided there with him at that time, October 1st, 1895?" she answered, "I resided there most of the time for four or five years; I presume that is the time."

As a matter of fact, at this very date—September 27, 1895—the parties were in St. Johns, and, in this trial, Mrs. Steel testifies that even previous to this time they had sold off some of their household goods at Hilgard, and that Mr. Steel's purpose in going back after September, 1895, was to close out his business and dispose of the household goods.    The purpose of Mr. Steel's sojourn in Oregon was the conduct of a business necessarily but temporary in its nature, and, during all the years that he was engaged in this business, it appears that he and his wife spent a portion of the time at their home in St. Johns, which was kept up during all these years at Mr. Steel's expense, and occupied by members of the family.

As to what constitutes a domicile, this court has

expressed itself in *Beecher* v. *Common Council of Detroit*, 114 Mich. 228 (72 N. W. 206), at some length. The question of intent is in most cases controlling, and, without enlarging upon all the circumstances of the present case, we feel satisfied that Mr. and Mrs. Steel never intended to take up their permanent abode at Hilgard, and, although he was guilty of an indiscretion in casting a vote there, and may not have understood what, in a legal sense, was his residence, the facts show that his residence was in fact St. Johns. The circuit judge, who saw all the witnesses, evidently placed credit upon the testimony given by defendant and other members of the family, as well as by a large number of the neighbors and friends.

The decree dismissing the bill will be affirmed, with costs.

HOOKER, C. J., and MOORE, J., concurred. LONG and GRANT, JJ., did not sit.