SIMPSON v. MURPHY.

1. TRIAL—DIRECTED VERDICT—APPEAL AND ERROR.
   Where both parties asked for a directed verdict, neither can now complain that there was a question of fact for the jury.[1]

2. SALES—FRAUD—EVIDENCE—SUFFICIENCY.
   In an action for the initial payment on the purchase of a lease and furniture of an apartment house, where plaintiff refused to complete the purchase because of claimed fraud on defendants' part in misrepresenting the number of apartments and the annual income, evidence held, insufficient to show fraud; there being nothing concealed and no misrepresentations made.[2]

3. SAME—MUTUAL RESCISSION—WHAT CONSTITUTES.
   To constitute a mutual rescission there must of necessity be a mutual release of further obligations under the contract and a restoration of the status quo.

4. SAME—EVIDENCE HELD NOT TO SHOW MUTUAL RESCISSION.
   A written notice by defendants to plaintiff that if he did not complete his purchase of a lease and furniture of an apartment house by a certain date, they would declare

---

[1]Trial, 38 Cyc. p. 1583; [2]Sales, 35 Cyc. p. 573; [3]Id., 35 Cyc. p. 129.
229—Mich.—29.

it null and void, and an answer by him charging them with false representations and a demand on them to make good thereon, *held*, not to constitute a mutual rescission entitling him to the return of the initial payment.[4]

Error to Wayne; Merriam (DeWitt H.), J.    Submitted October 15, 1924.    (Docket No. 95.)    Decided December 31, 1924.    Rehearing denied April 3, 1925.

Assumpsit by Harry H. Simpson against Daniel C. Murphy and others for the initial payment on an agreement for the purchase of a lease and furniture. Judgment for defendants on a directed verdict.    Plaintiff brings error.    Affirmed.

*A. F. Freeman*, for appellant.
*Frank J. Riggs*, for appellees.

McDONALD, J.    In this action the plaintiff is seeking to recover the initial payment on a preliminary agreement for the purchase of the lease and furniture of the Abbottsford apartments on Peterboro avenue, in the city of Detroit.    The suit is brought on the theory that the defendants misrepresented the number of apartments in the building and the rentals to be derived therefrom, and that, following negotiations for a modification of its terms, there was a mutual rescission of the contract.    A denial of these claims presented the issue tried out in the lower court.    At the conclusion of the proofs both parties made motions for a directed verdict.    After some discussion the court discharged the jury, saying to counsel:

"*The Court:* It is understood is it not, now, I do not want to be misled in permitting this jury to go, it is understood that my written findings of fact in this case will be considered as a verdict in this case?
"*Mr. Johnson:* Yes.
"*The Court:* Because it is purely on the law?
"*Mr. Freeman:* Yes, your honor."

---

[4] Sales. 35 Cyc. p. 129.

Subsequently the court made findings of the facts and the law to which the plaintiff filed exceptions.   A motion for a new trial was denied and judgment was entered for the defendants.   In view of the colloquy between the court and counsel as to the effect of his findings on the law and the facts, we will treat the case as one wherein there was a directed verdict in favor of the defendants.   As both parties asked for a directed verdict neither can now complain that there was a question of fact for the jury.   *Kyselka* v. *Assurance Co.*, 194 Mich. 430; *Germain* v. *Loud*, 189 Mich. 38; *City National Bank* v. *Price's Estate*, 225 Mich. 200.

"If the court's decision, both parties having requested a directed verdict, is right in law and supported by substantial evidence, the judgment must be affirmed."   *Funk* v. *Guaranty Co.*, 224 Mich. 95.

Was there substantial evidence to support the judgment?   The plaintiff claims that he was induced to sign a preliminary agreement for the purchase of the lease and the furniture of the Abbottsford apartments because of the fraud of the defendants and their agent, Mr. Palmer, in misrepresenting the number of apartments and the amount of the income therefrom, and that in reliance upon their representations he made an initial payment of $500.   These claims of fraud are not sustained by the evidence.   The defendants represented that there were 44 apartments.   One of these was an unfinished bachelor apartment in the basement.   Plaintiff inspected this apartment before he made the contract, and knew all about it.   He now claims that this apartment should not be included in the 44 and that as a matter of fact there are only 33 apartments.   Nothing was concealed from him by the defendants, and no misrepresentations were made as to the number of apartments.   He testified on cross-examination:

"When I signed the contract I knew that the bachelor apartment was not complete, but they told me it would be complete, but I knew it was not when I signed this contract."

As to the alleged misrepresentation in regard to the income from rentals, it appears from the evidence that the building was new; that two apartments in the basement had not been completed; that the building had been rented only for four or five months, that Mr. Palmer made an estimate of the annual income by multiplying the weekly rentals for the month of August by 52. The result showed a yearly income of $57,200. That this figure was but an estimate of what the apartment might yield in rentals was well understood by the plaintiff, who was experienced in handling property of this kind. This is shown by his testimony given on cross-examination.

"I knew that this $57,200 represented a year's rent that the apartment would bring, if rented as it then was, but I knew also that it was a mere estimate of what it might rent for if every apartment was rented and rented at the prices it rented for in August, 1920."

The court did not err in holding as a matter of law that the defendants were not guilty of fraud, as claimed by the plaintiff.

It was further urged by the plaintiff that he was entitled to a return of the initial payment because there was a mutual rescission of the contract. The evidence is that after the contract of October 27, 1920, the plaintiff made no attempt to perform on his part and his letter to Mr. Palmer of date November 19, 1920, clearly indicates that the reason he did not do so was because he was unable to secure a modification of the contract as to price. He at no time attempted to rescind on the ground of fraud, though he made a claim of fraud with the apparent purpose of securing more favorable terms. On the 4th of December,

1920, the defendants notified him that unless he completed the purchase by Monday, December 6, 1920, they would declare it "null and void." He replied to this notice by letter on December 6th in which he said in part:

"I entered into this matter in good faith, paid my money to you upon representations that were made to me, and still claim today that if such representations are true, I am ready to pull through with the proposition, but I shall hold you to the representations made and request the return of my deposit. I regret that this matter did not go through to the satisfaction of all parties concerned and appreciate your effort in making concessions to try to meet the satisfaction, but there were some things that I did not seem to be able to overcome in the proposition which I regret."

The plaintiff insists that the two letters constitute a mutual rescission of the contract. It is plainly evident that they do not. To constitute a mutual rescission there must of necessity be a mutual release of further obligations under the contract and a restoration of the *status quo*. There was nothing of that character in this case. The parties did not agree on anything. The letters merely show that the plaintiff was in default and that the defendants insisted on terminating the contract, unless he performed his part by a specified time, while the plaintiff was insisting that they make good on their representations or return his deposit.

After a careful examination of this record we are convinced that there is substantial evidence to sustain the decision of the circuit judge, and that it is right in law. No other questions require discussion.

The judgment is affirmed, with costs to the defendants.

BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. CLARK, C. J., did not sit.