Peter GIGLIO and Susan Giglio, Plaintiffs,

v.

BANK OF DELAWARE, Defendant.

Court of Chancery of Delaware, Kent.

June 11, 1973.

Kenneth B. Mifflin, Community Legal Aid Society, Inc., Dover, for plaintiffs.

Eduard F. von Wettberg, III, and Edward M. McNally, Morris, James, Hitchens & Williams, Wilmington, for defendant.

Martin I. Lubaroff, Richards, Layton & Finger, Wilmington for amicus curiae, Delaware Bankers Assn.

BROWN, Vice Chancellor.

This matter is before the Court on cross-motions for summary judgment. It was initiated upon the petition of Plaintiffs for injunctive relief to prevent the Defendant, Bank of Delaware (hereafter referred to as "Bank") from disposing of the motor vehicle repossessed from Plaintiffs pursuant to a security agreement executed under the terms of the Delaware Commercial Code. By previous order of this Court, the Bank agreed not to sell or dispose of the vehicle pending the outcome of this litigation. The Delaware Bankers Association was given leave to file briefs and affidavits as amicus curiae. The basic facts have been stipulated to by counsel as follows.

On December 28, 1971, Plaintiffs entered into a "Motor Vehicle Conditional Sales Contract" with Kent County Motor Company for the purchase and sale of a 1972 Oldsmobile. On the same date, Kent County Motor Company sold and assigned all its right, title and interest in the contract and the automobile to the Bank. At all times pertinent to this action the Bank had a perfected security interest in the vehicle pursuant to Article 9 of the Delaware Uniform Commercial Code. (5A Del.C. Art. 9)

Plaintiffs proceeded to make their monthly installment payments to the Bank, as called for by the contract, through the month of April, 1972. Thereafter, Plaintiffs failed to make the installment payment due on May 28, 1972. They were contacted by the Bank concerning this, but thereafter they also failed to make the installment payment due on June 28, 1972, thereby making them delinquent by two payments.

On June 30, 1972 the Bank took possession of the automobile without the knowledge of the Plaintiffs as to just when it was being repossessed. The repossession was accomplished quietly, perhaps somewhat surreptitiously, by a bank official using a duplicate key and removing the vehicle from the area of Plaintiffs' home at about 7:15 A.M. No breach of the peace was involved. The Bank did not give the Plaintiffs written notice of its intention to take possession of the vehicle before so doing. Plaintiffs agree that at the time of the repossession they had breached the contract and were in default thereunder, and they further agree that the Bank had not breached the agreement in any way and had not waived the Plaintiffs breach. Nor do the Plaintiffs contend that there was any breach of warranty with respect to the purchase and sale of the car.

Plaintiffs do contend, however, that the action by the Bank in retaking the vehicle in the foregoing manner, without prior notice to them and without first affording them the benefit of a judicial hearing, constituted a taking of their property without due process of law. They further contend that insofar as 5A Del.C. § 9–503 and § 9–504 purport to authorize such action, they are unconstitutional.

The precise question presented, therefore is: Do § 9–503 and § 9–504 of the Delaware Uniform Commercial Code violate the guaranty of procedural due process provided by the 14th amendment to the United States Constitution by authorizing the taking of property (1) without notice and (2) without a hearing?

The pertinent part of the Delaware Commercial Code here in controversy, 5A Del.C. § 9–503, reads as follows:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . ."

The contract between the parties in this case did not provide anything to the contrary, and in fact specifically authorized the Bank, on default, to enter any premises without notice or demand on Plaintiffs, and without breach of the peace, to retake possession of the vehicle.

While the question here presented may be novel in this State, it has received considerable treatment in other jurisdictions throughout the country, and, with one exception, the result has been consistent.

Plaintiffs argument is based on a series of recent decisions of the United States Supreme Court which have held that certain takings of property or property interests without the benefit of prior notice and hearing constitute a denial of due process. In Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970) it was held that a state could not arbitrarily terminate welfare benefits to a recipient in the absence of a hearing. In Sniadach v. Family Finance Co., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) it was held improper to garnishee wages for a debt prior to affording the debtor a hearing. In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L. Ed.2d 90 (1972) the suspension of a drivers license without notice and hearing was labeled a violation of due process. And, in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) replevin statutes in both Florida and Pennsylvania which authorized state officials to recover property covered by conditional sales agreements prior to the hearing stage were also held unconstitutional for the same reason.

These decisions, it is urged, stand for the proposition that no property can be retaken by a conditional seller, even on admitted default by the buyer, without first giving the defaulting buyer notice of the intention to retake and the opportunity to first be heard on the issue in an appropriate tribunal. It is further argued that even though no state official was involved in the taking in this case, the repossession without notice is authorized by § 9–503 and that consequently any such retaking is accomplished by virtue of State law.

On this last point Plaintiffs rely on the reasoning of Adams v. Egley, 338 F.Supp. 614 (S.D.Cal.1972). In fact, this case specifically holds that the repossession of a motor vehicle pursuant to a security agreement so providing, executed pursuant to § 9–503 of the Uniform Commercial Code, is action "under color of State law" as defined by federal Civil Rights statutes. It must be noted, however, that insofar as it pertains to this provision of the Uniform Commercial Code, this decision appears to stand alone against numerous decisions to the contrary, and is presently on appeal.

The Bank takes the position that Plaintiffs action must fail because the 14th amendment only applies to the taking of private property without due process by a state, and it points out that in this case the retaking of the collateral was accomplished by one private party against another private party pursuant to the terms of an agreement entered into between them. It argues that the State was not involved in any way.

■ This Court has previously noted that state action, for the purpose of the

14th amendment prohibitions, is found wherever there is state participation through any arrangement, management, funds or property, and the fact that conduct is "formally private" does not insulate it from the amendment if it is "impregnated with a governmental character." Bank of Delaware v. Buckson, Del.Ch., 255 A.2d 710 (1969). See also Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961).

Using this standard, it becomes feasible to briefly review the history of the right to peaceful repossession as set forth in the statute. The English common law, over the years, eventually developed uniformity in holding that where provided in the agreement between the parties, a conditional seller might repossess the property upon the buyers default by means of retaking the property wherever it could be located. Initially, he could use force if necessary so long as he did not breach the peace. 3 Jones, The Law of Chattel Mortgages and Conditional Sales §§ 1337–1339 (6th Ed. 1933). This right of self-help in the secured party was recognized in this State in Watertown Steam Engine Co. v. Davis, Del.Super., 5 Houst. 192 (1877) wherein the Court stated

> ". . . . the conditional vendor on failure of payment can enter upon the premises and repossess himself of it [secured property], provided such be the bargain of the parties . . . ."

In 1919 Delaware adopted the Uniform Conditional Sales Act, 30 Del.Laws Ch. 192, and thus adopted by statute by Section 16 thereof (later codified as 6 Del.C. § 916) the pre-existing common law right of self-help repossession. When the Uniform Commercial Code was enacted in 1967 this same common law principle was again restated in 5A Del.C. § 9–503.

It therefore appears that § 9–503 does not constitute the creation by the State of a new right in a secured creditor which he would not theretofore have had but for the statute, but rather it is merely a statutory recognition of the law which has existed for almost a century, namely, that if the parties so provide in their agreement, a secured party may privately retake his collateral upon default by private means and without the necessity of judicial action, provided he can do so peacefully. Viewed in this light, I do not feel that a private repossession pursuant to a contract recognized as valid by § 9–503 is such conduct as to be "impregnated with a governmental character" to such extent as would cause it to fall under the 14th amendment coverage of state action.

This conclusion is also supported by a wealth of authority. For other decisions which have reached a similar result on the question of whether or not the enactment of § 9–503 of the Uniform Commerical Code is sufficient "state action" to make the standards of the due process clause applicable to "self-help" repossession of collateral by a secured party, see the following: Kirksey v. Theilig, 351 F.Supp. 727 (D.Colo.1972); Greene v. The First National Exchange Bank of Virginia, 348 F. Supp. 672 (W.D.Va.1972); Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal. 1972); McCormick v. First National Bank of Miami, 322 F.Supp. 604 (S.D.Fla.1971); Messenger v. Sandy Motors Inc., 121 N.J. Super. 1, 295 A.2d 402 (N.J.Super.1972); Kipp v. Coyens, 11 U.C.C.Rep. 1067 (Cal. Super.1972); King v. South Jersey National Bank (Sup.Ct.N.J., Chancery Division, Camden County, 1972); Brown v. United States National Bank of Oregon, 509 P.2d 442 (Supr.Ct.Or., 1973); Pease v. Havelock National Bank, 351 F.Supp. 118 (D.Neb.1972); Colvin v. Avco Financial Services of Ogden, Inc. (D.Utah 1973), and Shirley v. The State National Bank of Connecticut (D.Conn.1973).

Of the foregoing, Kirksey v. Theilig; Oller v. Bank of America; Messenger v. Sandy Motors, Inc.; Colvin v. Avco Financial Services of Ogden, Inc., and Shirley v. The State National Bank of Connecticut all considered the decision in Ad-

ams v. Egley, supra, and declined to follow it, as do I. Even in Fuentes v. Shevin, supra, relied upon by Plaintiffs, the Supreme Court acknowledged in a footnote as follows at 407 U.S. 67, 79, n. 12, 92 S.Ct. 1983, 1993, 32 L.Ed.2d 556: "The creditor could, of course, proceed without the use of state power, through self-help, by 'distraining' the property before a judgment."

Having determined that no state action is involved based upon the facts presented, it necessarily follows that the Plaintiffs' motion for summary judgment must be denied. The motion of the Defendant Bank for summary judgment is granted. Counsel for the Defendant is directed to present the appropriate order on notice.