ROBERT JEFFERDS, Respondent, v HAROLD W. ELLIS, Appellant.

Fourth Department, December 18, 1987

## APPEARANCES OF COUNSEL

*Ronald D. Ploetz* for appellant.

*J. Michael Shane (David Franz* of counsel), for respondent.

*Robert Abrams, Attorney-General (Michael Buskus* of counsel), for State of New York.

## OPINION OF THE COURT

LAWTON, J.

The principal issue raised on appeal concerns the constitutionality of UCC 9-503, which authorizes a secured party to retake possession of the collateral without prior notice and hearing. Contrary to the determination at Special Term (127 Misc 2d 477), we hold that the section is constitutional and we reverse the order appealed from and remit the matter to Supreme Court for further proceedings.

Defendant and plaintiff entered into an agreement for the lease and purchase of a 1974 GMC Astro truck, which provided that plaintiff would lease this vehicle for a period of 15 months for $460 per month, and at the end of that period would have the option to purchase the vehicle for the sum of $6. Plaintiff agreed to pay all taxes, tolls, license fees and liens occurring from the operation of the vehicle and to maintain certain liability insurance and fire, theft, and collision insurance on the vehicle. The agreement provides that the "Leasee *[sic]* agrees to maintain and repair said vehicle as it is necessary in the operation of said vehicle." Further, the agreement provides that the lessee agrees that the vehicle is to haul freight on certain designated routes. Finally, it provides that any violation of the agreement will render the contract void. There is no provision in the agreement concerning lessor's right to repossession on default.

Some six months later, defendant repossessed the vehicle without the knowledge or permission of plaintiff. This repossession was done without breach of the peace and without judicial process.

Thereafter, plaintiff made application pursuant to CPLR article 71 for an order directing defendant to return the vehicle to plaintiff or, in the alternative, to require defendant to post security to cover the value of the property and any economic loss sustained by plaintiff. Plaintiff in his supporting affidavit acknowledged that he owed Pennsylvania fuel sales taxes in the approximate amount of $150, but contended that defendant had no right to repossess the vehicle based on this nonpayment. Plaintiff further stated that he was current in his regular monthly payments. In response to plaintiff's order to show cause, defendant's affidavit asserted that he had the right to repossess this vehicle because of plaintiff's breach of the lease agreement, in failing to pay Pennsylvania highway use tax and the New York State highway use tax, in failing to maintain the vehicle in a safe condition, and in operating the vehicle over nondesignated routes. A summons, complaint, and answer were subsequently served.

Special Term granted the motion holding that the repossession rights afforded to a secured party upon default under UCC 9-503 and 9-504 were in violation of plaintiff's constitutional right to due process under the Constitution of the State of New York. On appeal, this court, without addressing the merits, reversed because the Attorney-General had not been notified, as required by CPLR 1012 (b), that the constitutionality of a statute was in issue (122 AD2d 595).

We have previously passed upon the constitutionality of UCC 9-503. In *Crouse v First Trust Union Bank* (86 AD2d 978, *appeal withdrawn* 56 NY2d 1034), which concerned a default under a chattel mortgage, we granted summary judgment "declaring sections 9-503 and 9-504 of the Uniform Commercial Code constitutional insofar as they confirm the defendant's right to peaceably take and sell the plaintiff's automobile without prior notice and hearing". *(Crouse v First Trust Union Bank, supra,* at 978.) In *Gallets v General Motors Acceptance Corp.* (96 AD2d 756, *appeal dismissed* 60 NY2d 1014), in reliance on the holding in *Crouse (supra),* we upheld the constitutionality of the Motor Vehicle Retail Instalment Sales Act (Personal Property Law §§ 301-315) insofar as the statute allows the seizing and sale, without prior notice or

hearing, of automobiles financed under a retail installment sales contract.

Both plaintiff and Special Term distinguish *Crouse (supra)* and *Gallets (supra)*. *Crouse,* they say, dealt with a chattel mortgage rather than a conditional sales contract and *Gallets* dealt with different security statutes. Further, they assert that the repossession of the truck constituted State action because at common law repossession was authorized only if specifically provided for in the conditional sales contract.

We disagree. In *Gallets (supra),* we upheld the constitutionality of repossession under the Motor Vehicle Retail Instalment Act. That holding applies to the facts of this case since a motor vehicle retail installment contract is a conditional sales contract *(Yantzi v Manzer,* 30 Misc 2d 770) and here the lease and purchase agreement is equivalent to a conditional sales contract. Further, repossession under a conditional sales contract was authorized at common law, even in the absence of an express contractual provision. This general rule is stated in 3 Jones, Chattel Mortgages and Conditional Sales § 1337, at 421 (Bowers ed): "Since, however, from the intrinsic nature of a conditional sale the buyer has the right of possession only so long as he is not in default in the performance of his agreement, and the ownership of the legal title draws to it the possession except during such time as the owner has conferred that right upon another, when the right ceases in the vendee it reverts to the vendor as a matter of law, and no contractual stipulation is essential in that behalf. Consequently, when the vendee defaults in payment, the vendor may repossess the property, though the contract may be silent as to such right."

The early New York case of *Humeston v Cherry* (23 Hun 141 [1880]) also compels the conclusion that a seller, even without any statutory right or contractual provision, could repossess personal property sold under a conditional sales contract upon breach of condition of payment.

Absent any clear holding to the contrary, and applying the principle that statutes should be interpreted reasonably to uphold their constitutionality,[1] we hold that UCC 9-503 and 9-

---

1. As stated in *Matter of Fay* (291 NY 198, 206-207): "The inquiry thus required of us must proceed with proper regard for the settled rule that a presumption of constitutionality attaches to every statute enacted by the Legislature and '* * * that a statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and that until every reasonable mode of reconciliation of

504 are constitutional whether or not the conditional sale agreement contains an express provision authorizing repossession on default. Such a holding is in keeping with one of the objectives of the Uniform Commercial Code, viz., to streamline transactions and de-emphasize form.[2] No logical reason has been advanced why repossession under a chattel mortgage agreement pursuant to UCC 9-503 and 9-504 is constitutionally permissible, but that repossession under a conditional sales agreement is not. This court's holdings in *Crouse (supra)*, *Gallets (supra)*, and in the present case, are in accord with the holdings of the courts of many other States that peaceable self-help remedies by secured creditors do not involve "State action" but, rather, constitute private action not governed by the Fourteenth Amendment.[3]

The record does not indicate that defendant was notified that the motion was to be treated as a motion for summary judgment; rather, the record indicates that the motion was

---

the statute with the Constitution has been resorted to, and reconciliation has been found impossible, the statute will be upheld.' *(People ex rel. Henderson* v. *Board of Supervisors,* 147 N. Y. 1, 15, 16; *People ex rel. Carter* v. *Rice,* 135 N. Y. 473, 484, 500, 501; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 196-199.)"

2. Kripke, Practice Commentary, McKinney's Cons Laws of NY, Book 62½, UCC 9-102, at 323 ("This article abolishes all formal distinctions between conditional sale contracts, chattel mortgages, trust receipts, etc., and distinctions based on passage of title. This eliminates many sterile problems of law"); *accord* UCC 9-102, comment.

3. The States include *Alabama (Speigle v Chrysler Credit Corp.,* 56 Ala App 469, 323 So 2d 360, 363-364 [1975]), *California (Kipp v Cozens,* 40 Cal App 3d 709, 714, 115 Cal Rptr 423, 425-427 [1974]), *Colorado (Deere Co. v Catalano,* 186 Colo 101, 106-107, 525 P2d 1153, 1154-1156 [1974]), *Delaware (Giglio v Bank of Delaware,* 307 A2d 816, 818-819 [Del Ch 1973]), *Florida (Northside Motors v Brinkley,* 282 So 2d 617, 622-625 [1973]), *Idaho (Massey-Ferguson Credit Corp. v Peterson,* 102 Idaho 111, 115-116, 626 P2d 767, 771-772 [1981]), *Iowa (Interfirst Bank v Hanson,* 395 NW2d 857, 860-861 [1986]), *Kansas (Benschoter v First Natl. Bank,* 218 Kan 144, 151-152, 542 P2d 1042, 1046-1047 [1975], *appeal dismissed* 425 US 928 [1976]), *Massachusetts (Penney v First Natl. Bank,* 385 Mass 715, 719, 433 NE2d 901, 904 [1982]), *Michigan (Hill v Michigan Natl. Bank,* 58 Mich App 430, 437, 228 NW2d 407, 409-410 [1975]), *Mississippi (McComb Equip. Co. v Cooper,* 370 So 2d 1367, 1368 [1979]), *New Jersey (King v South Jersey Natl. Bank,* 66 NJ 161, 173-178, 330 A2d 1, 5-9 [1974]), *Oklahoma (Helfinstine v Martin,* 561 P2d 951, 954-958 [1977]), *Oregon (Brown v United States Natl. Bank,* 265 Ore 234, 237-238, 509 P2d 442, 444-446 [1973]), *South Dakota (First Natl. Bank v Beug,* 400 NW2d 893, 895 [1987]), *Vermont (Colonial Swimming Pool Co. v Camperama of Vt.,* 134 Vt 463, 465-466, 365 A2d 262, 263-264 [1976]), *Washington (Mount Vernon Dodge v Seattle First Natl. Bank,* 18 Wash App 569, 582-583, 570 P2d 702, 709-710 [1977]), and *West Virginia (Cook v Lilly,* 158 W Va 99, 102-103, 208 SE2d 784, 786-787 [1974]).

brought under CPLR article 71 for an order for the return of a chattel. Under that article, a plaintiff is entitled to such an order if he presents an undertaking and the court finds that it is probable that a plaintiff will succeed on the merits (see, CPLR 7102 [d]). On remittal, Special Term should consider whether the application for the provisional remedy under CPLR 7102 (d) should be granted. The merits of the action, of course, must be determined after a trial of the plenary action.

Accordingly, the order should be reversed and the matter remitted to Special Term, Supreme Court, Cattaraugus County, for further proceedings in accordance with this opinion.

DOERR, J. P., BOOMER, GREEN and DAVIS, JJ., concur.

Order unanimously reversed, on the law, with costs, and matter remitted to Supreme Court, Cattaraugus County, for further proceedings, in accordance with opinion by Lawton, J.